# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CORNELIUS H. DUNSON,

        Petitioner,                              Case Number: 5:08-CV-13480

v.                                                HON. JOHN CORBETT O'MEARA

LLOYD RAPELJE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on Petitioner Cornelius H. Dunson's *pro se* petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner is presently in the custody of the Michigan Department of Corrections pursuant to convictions for two counts of armed robbery, conspiracy to commit armed robbery, and unlawfully driving away an automobile. He claims that his convictions were unconstitutionally obtained because the jury instructions were incomplete and his trial attorney was ineffective. For the reasons set forth below, the Court denies the petition.

## I.

The Michigan Court of Appeals summarized the facts adduced at trial leading to Petitioner's convictions as follows:

> This case arises out of the defendant's involvement in the armed robbery of Mr. Mack's Bar and Grill in Easpoint on May 10, 2005. Defendant was arrested based on a police officer's positive identification of defendant from a photographic lineup. The identifying officer pursued the vehicle that was stolen from the bar's owner and engaged in a foot pursuit of the driver of the stolen vehicle after the driver abandoned the stolen vehicle. According to the officer,

defendant was the driver. Defendant's accomplice, D'Angelo Camp, was apprehended after a high-speed police chase involving a vehicle that had been following the stolen vehicle. Police recovered a cellular telephone from Camp's vehicle, and found that Camp called defendant's cellular telephone moments after the robbery.

*People v. Dunson*, No. 268124, slip op. at 1.

## II.

Following a jury trial in Macomb County Circuit Court, Petitioner was convicted of two counts of armed robbery, one count of conspiracy to commit armed robbery, and unlawfully driving away an automobile. He was sentenced to 15 months to 20 years' imprisonment for each armed robbery conviction and for the conspiracy conviction, and to 23 to 60 months' imprisonment for the unlawfully driving away an automobile conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. The failure to instruct appellant's jury that aiders and abetters must have the necessary specific intent to be guilty of a specific intent crime constitutes reversible error as it denied him a fair trial.

II. The appellant is entitled to a resentencing because the incorrect scoring of offense variables 1 and 2 in the sentence information reports used at appellant's sentencing resulted in appellant being denied due process.

III. Appellant was denied the effective assistance of counsel where his trial counsel failed to present the testimony of witness Deangelo Camp.

Petitioner also filed a motion to remand for an evidentiary hearing on his ineffective assistance of counsel claim. The Michigan Court of Appeals denied his motion to remand and affirmed his convictions and sentences. *People v. Dunson*, No. 268124 (Mich. Ct. App. Aug. 7, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He

raised the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Dunson*, No. 134927 (Mich. Ct. App. Nov. 29, 2007).

Petitioner then filed the pending petition for a writ of habeas corpus. He raises the same jury instruction and ineffective assistance of counsel claims raised in state court.

### III.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1); see also *Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the

governing law set forth in our cases. . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 410-11.

## IV.

### A.

In his first claim, Petitioner argues that the trial court failed to adequately instruct the jury that one who aides and abets a crime must have the requisite specific intent to commit the crime.

Respondent argues that this claim is procedurally defaulted because defense counsel

4

failed to object at trial. When considering habeas petitions, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of this claim.

Generally, claims of erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "Before a federal court may overturn a conviction resulting from a state trial in which this instruction was used, it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). It is not enough to show that the instruction was incorrect under state law. *Estelle v. McGuire*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir.2008) (*quoting Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir.1997) (internal quotation marks omitted)). "When a court makes an error in instructing the jury, the proper inquiry is 'whether there is a reasonable likelihood that the jury' applied the instruction 'in an unconstitutional

5

manner.'" *Id*. at 455 (*quoting Victor v. Nebraska*, 511 U.S. 1, 6 (1994)).

The Michigan Court of Appeals, after finding that the issue was not properly preserved for review, nevertheless addressed the merits of the claim, holding, in relevant part:

> At trial, defense counsel indicated satisfaction with the proposed jury instructions before they were read for the jury. After the jury was sent out to deliberate, defense counsel reaffirmed that he had no objection. Nevertheless, we note that, when considered in their entirety, the jury instructions fairly and adequately presented the law to the jury. The trial court read CJI2d 8.1, the standard aiding and abetting instruction, immediately after the armed robbery instruction. This Court has repeatedly upheld the validity of the standard definition of aiding and abetting contained in CJI2d 8.1. . . . There was no error.

*Dunson*, slip op. at 1-2.

Although the Michigan Court of Appeals analyzed these claims under the plain error standard, the decision is sufficiently thorough to constitute a reasoned adjudication on the merits within the meaning of 28 U.S.C. § 2254(d). This Court therefore reviews the decision under AEDPA's deferential standard of review. *Fleming v. Metrish*, 556 F.3d 520, 531-32 (6th Cir.2009); *compare with Benge v. Johnson*, 474 F.3d 236, 246-47 (6th Cir. 2007) (where state court's plain error review did not amount to adjudication on the merits federal habeas court employs *de novo* review) and *Maples v. Stegall*, 340 F.3d 433, 436-37 (6th Cir. 2003) (same).

The trial court first instructed the jury regarding the elements of armed robbery. Specifically, the trial court instructed that armed robbery required proof of specific intent. The trial court then read CJI2d 8.1, including an instruction that specific intent is necessary for a finding of guilt based upon an aiding and abetting theory.

Petitioner has failed to show that the state court's decision that the trial court's instruction adequately conveyed to the jury the elements of the charged crimes, including the intent element, was contrary to or an unreasonable application of Supreme Court precedent; nor

6

has he shown that the instruction so infected the entire trial as to violate his right to due process. Thus, Petitioner is not entitled to habeas corpus relief with respect to this claim.

**B.**

In his second claim for habeas corpus relief, Petitioner argues that trial counsel was ineffective in failing to present witness DeAngelo Camp, Petitioner's accomplice. In support of his claim that Camp would have provided exculpatory testimony, Petitioner presents an affidavit in which Camp attests that, if he had been called to testify, he would have testified that Petitioner was not involved in the robbery and that he never told police that Petitioner was involved in the robbery.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the

7

time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Michigan Court of Appeals held that counsel was not ineffective in failing to call Camp as a witness because it was a reasonable strategic decision that did not prejudice Petitioner. The state court stated, in relevant part:

> To establish ineffective assistance of counsel, defendant must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that defendant was so prejudiced by his trial counsel's errors that he was denied a fair trial, i.e., that a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *People v. Moorer*, 262 Mich. App. 64, 75-76; 683 N.W.2d 736 (2004). Effective assistance of counsel is presumed, and defendant bears a heavy burden of proving otherwise. *Id.* at 76. . . .
>
> To support his claim of ineffective assistance, defendant provides an affidavit in which Camp attests that if he had been called as a witness at trial, he would have testified that defendant was not involved in the robbery. However, abundant evidence was presented at trial that defendant was Camp's accomplice: Camp referred to his accomplice by defendant's first name; the handgun found was registered to defendant; cellular telephone records linked defendant to Camp at the time of the incident; defendant was identified as the driver of the stolen vehicle; and defendant was identified by the bar owner as one of the two men who robbed her.
>
> It is presumed that defense counsel made a strategic decision not to present Camp as an exculpatory witness. . . . Indeed, the credibility of Camp's testimony disavowing defendant's involvement in the robbery was inherently suspect in light of his friendship with defendant. Moreover, the weight the jury would afford Camp's testimony was dubious, given the overwhelming evidence of

8

>    defendant's participation in the robbery, as well as the fact that Camp had already
>    assumed responsibility for his own involvement in the crime. Further, even if
>    defendant could establish that defense counsel erred in failing to call Camp as a
>    witness, he cannot demonstrate a reasonable probability that, but for the error, the
>    outcome of the trial would have been different.

*Dunson*, slip op. at 3.

The Michigan Court of Appeals, although not specifically citing *Strickland*, cited cases which clearly applied the *Strickland* standard. When considering new, purportedly exculpatory evidence, a "court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence," and may "assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial. *Schlup v. Delo*, 513 U.S. 298, 332 (1995). Camp's affidavit was executed approximately one year after he was convicted and sentenced for the crimes at issue in this case. By then, he had nothing to lose by executing the affidavit and could exculpate Petitioner in the process. Camp also may not have testified in accordance with the affidavit at Petitioner's trial. Thus, Petitioner has not shown that counsel's decision not to call Camp was in error. Moreover, as the state court noted, the evidence against Petitioner, including Camp's own statement to police, was overwhelming, thus, Petitioner fails to establish the prejudice prong of *Strickland*. The Court finds that the state court's adjudication of this claim was not contrary to or an unreasonable application of *Strickland*.

## V.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a

9

certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## VI.

The petitioner has not shown he is incarcerated in violation of federal law as determined by the Supreme Court.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

s/John Corbett O'Meara
United States District Judge

Date: July 21, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, July 21, 2010, using the ECF system and upon Cornelius Dunson at Ojibway Correctional Facility, N 5705 Ojibway Rd., Marenisco, MI 49947-9771 by ordinary mail.

s/William Barkholz
Case Manager